**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-02007-NYW

SANDRA M. LARA,

      Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,[1]

      Defendant.

---

**MEMORANDUM OPINION AND ORDER**

---

Magistrate Judge Nina Y. Wang

      This civil action arises under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-33, for review of the final decision of the Commissioner of Social Security Administration (the "Commissioner" or "Defendant") denying the application for Disability Insurance Benefits ("DIB") filed by Plaintiff Sandra M. Lara ("Plaintiff" or "Ms. Lara"). Pursuant to the Parties' consent, [#15], this civil action was assigned to this Magistrate Judge for a decision on the merits. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; D.C.COLO.LCivR 72.2. After carefully considering the Parties' briefing, the entire case file, the Administrative Record, and the applicable case law, this court respectfully **AFFIRMS** the Commissioner's decision.

---

[1] On July 9, 2021, President Biden appointed Kilolo Kijakazi as Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Kijakazi should be substituted for Andrew M. Saul, former Commissioner of Social Security, as the defendant in this suit. No further action need be taken to continue this suit pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("Any action instituted in accordance with this subsection shall survive notwithstanding any change in the person occupying the office of Commissioner of Social Security or any vacancy in such office.").

## BACKGROUND

Ms. Lara, born May 2, 1957, alleges that she became disabled on November 19, 2011 due to her wrist, shoulder, and head injuries, neck pain, bursitis,[2] and anxiety.  *See* [#14-5 at 143; #14-6 at 165].[3]  She alleged that she was always in pain, even while performing activities of personal care, could not go anywhere due to her constant pain, and could no longer work in the food industry due to her physical limitations.  [#14-6 at 174-80].  Given her various ailments, Ms. Lara filed her application for DIB on June 24, 2013.  *See* [#14-5 at 143].  The Social Security Administration denied Plaintiff's applications administratively on March 3, 2014.  *See* [#14-4 at 89-91].  Ms. Lara submitted a request for a hearing before an Administrative Law Judge, *see* [*id.* at 92], which was held before Administrative Law Judge Kathryn D. Burgchardt (the "ALJ" or "ALJ Burgchardt") on July 21, 2015.  [#14-2 at 27].  Following the hearing, the ALJ issued a decision on August 31, 2015, finding that Ms. Lara had the following severe impairments: left shoulder bursitis, wrist pain following trauma, history of head injury, chronic neck pain, dysthymia,[4] generalized anxiety disorder, and avoidant personality traits, *see* [*id.*], but that Ms. Lara was not disabled because her residual functional capacity ("RFC") permitted her to perform a range of light work.  [*Id.* at 19].  Relevant here, the ALJ gave "very little weight" to the opinion of Dr. Velma Campbell ("Dr.

---

[2] Bursitis is a "painful condition that affects the small, fluid-filled sacs . . . that cushion the bones, tendons and muscles near" the joints.  *See Bursitis*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/bursitis/symptoms-causes/syc-20353242   (last visited August 30, 2021).

[3] When citing to the Administrative Record, the court utilizes the docket number assigned by the Electronic Court Filing ("ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page.  For all other documents, the court cites to the document and page number generated by the ECF system.

[4] Dysthymia is also known as persistent depressive disorder and is a long-term, chronic form of depression.  *See Persistent depressive disorder (dysthymia)*, Mayo Clinic, available at https://www.mayoclinic.org/diseases-conditions/persistent-depressive-disorder/symptoms-causes/syc-20350929 (last visited August 30, 2021).

Campbell") upon finding that Dr. Campbell's opinion was not consistent with the evidence as a whole or the opinion of consultative examiner Dr. Timothy Moser ("Dr. Moser"). [*Id.* at 19-20]. Notably, with respect to Plaintiff's physical limitations, Dr. Campbell opined that Plaintiff was limited to lifting and carrying up to ten pounds for one-third of a workday and could only be on her feet for 30 minutes at a time and for 3 hours total in a workday, *see* [#14-8 at 334-35], while Dr. Moser found that Plaintiff had no functional restrictions for standing, walking, sitting, lifting, carrying, or other postural activities. [#14-7 at 303]. Plaintiff requested review of the ALJ decision, which the Appeals Council denied on February 21, 2017, [#14-2 at 1], rendering the ALJ's decision final.

Plaintiff sought judicial review of the ALJ's decision in the United States District Court for the District of Colorado in 2017, invoking the court's jurisdiction under 42 U.S.C. § 405(g). *See* [#14-10 at 435-46]. On December 28, 2017, the Honorable Lewis T. Babcock reversed the Commissioner's decision and remanded the case for further proceedings on the basis that the ALJ had failed to properly support her rejection of Dr. Campbell's opinion. [*Id.* at 443, 446]. Of note, in formulating her opinion, Dr. Campbell had relied in part on x-rays taken of Plaintiff's spine in February 2012, which showed degenerative changes; Dr. Campbell concluded that these x-rays provided a medical explanation for Plaintiff's complaints of pain. [*Id.* at 444-45; #14-8 at 332]. However, in her decision, the ALJ had stated that Plaintiff's medical records demonstrated "normal" x-ray imaging, which Judge Babcock found to be "in contradiction of x-rays taken of Plaintiff's thoracic and cervical spine on February 1, 2012." [#14-10 at 444]. Judge Babcock found that, based on the ALJ's statement concerning "normal imaging," it was "unclear if the ALJ considered the abnormal findings on the x-rays of Plaintiff's spine." [*Id.*]. While Judge Babcock acknowledged that the abnormal x-ray imaging "may not be sufficient evidence to overcome the

other evidence cited by the ALJ" in affording Dr. Campbell's opinion very little weight, he determined that the x-rays were "unquestionably relevant to the ALJ's conclusion that Dr. Campbell's opinion was not consistent with Plaintiff's" medical records, and found that remand for reconsideration of the x-rays and their effect on the weight given to Dr. Campbell's opinion was warranted.  [*Id.* at 445].

In addition, Judge Babcock noted "several weaknesses" in the opinion of Dr. Moser and found that, due to those weaknesses, and because Dr. Campbell relied upon Dr. Moser's opinion in giving very little weight to Dr. Campbell's opinion, "[f]urther consideration of Plaintiff's abnormal spine x-rays [was] particularly warranted."  In particular, Judge Babcock noted that (1) Dr. Moser, like Dr. Campbell, was not a treating physician; (2) that Dr. Moser assessed Plaintiff with no physical limitations, which the ALJ necessarily rejected in finding that Plaintiff *did* have physical limitations; and (3) although the ALJ found that Dr. Moser's opinion was consistent with the medical record, it was unclear from the record whether Dr. Moser had considered the abnormal x-rays in forming his opinion or whether the ALJ had considered those x-rays in making the finding of consistency.  [*Id.*].  On these bases, Judge Babcock found that "Dr. Moser's opinion and its impact on the weight given [to] Dr. Campbell's opinion should therefore also be given further consideration on remand."  [*Id.*].

On remand, ALJ Burgchardt heard the case again and conducted a second hearing with Ms. Lara on December 13, 2018.  [#14-9 at 370].  The ALJ received limited additional vocational-expert testimony from Vocational Expert Martin Rauer (the "VE") at the hearing,[5] as well as

---

[5] At the second hearing, the ALJ initially stated that she would not hear any additional testimony from the VE: "Am I going to [take VE testimony]? No, we already took that, at the first hearing. It's not been overturned.  Everything's been verified.  It's not in error.  So I'm leaving it, as is. There's no reason to redo it."  [#14-9 at 388].  However, the ALJ took limited VE testimony by presenting hypotheticals to the VE.  *See* [*id.* at 401-06].

limited testimony from Plaintiff, but indicated that her review was limited to consideration of the x-rays. *See, e.g.*, [*id.* at 386]. On February 4, 2019, the ALJ issued another unfavorable decision. [#14-9 at 356]. The ALJ concluded that Ms. Lara had the RFC "to perform light work as defined in 20 [C.F.R §] 404.1657(b)[6] except she requires work which is unskilled with an SVP[7] of 1 or 2 involving routine tasks and simple decision making," with the following limitations:

> She can only lift and/or carry up to ten pounds frequently and twenty pounds occasionally. She can stand and/or walk with normal breaks for a total of six hours in an eight-hour workday. She can sit with normal breaks for a total of six hours in an eight-hour workday. She can perform pushing and pulling motions with upper and lower extremities within the weight restrictions given. She should avoid unprotected heights, moving machinery, and vibration. She could perform postural activities occasionally, and that would be climbing of ramps and stairs, but no ladders, ropes or scaffolds. She could frequently stoop, kneel, crouch, and crawl. She must avoid extreme cold.

[*Id.* at 352-53]. The ALJ again afforded Dr. Moser's opinion "some weight" for substantially the same reasons stated in the original opinion. *Compare* [#14-2 at 19-20 (the original decision)] *with* [#14-9 at 354-55 (the instant decision)]. Moreover, the ALJ again gave Dr. Campbell's opinion "very little weight," providing an essentially identical explanation for doing so as she had in her original decision, *compare* [#14-2 at 19-21 (the original decision)] *with* [#14-9 at 353-55 (the instant decision)], and again used Dr. Moser's inconsistent opinion as a basis for discrediting Dr. Campbell's opinion. *See* [#14-9 at 353]. The ALJ noted in her decision that "[i]maging of the

---

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

[7] "SVP" refers to a "Specific Vocational Preparation level" and "'means the amount of lapsed time required by a typical worker to learn the technique, acquire the information, and develop the facility needed for average performance in a specific job-worker situation.'" *Marquez-Flores v. Berryhill*, No. 18-cv-00863-CMA, 2019 WL 1745208, at *2 n.5 (D. Colo. Apr. 18, 2019) (quoting 20 C.F.R. § 656.3 (2017)). "An SVP of two means it would require anything beyond a short demonstration up to and including 30 days for a typical worker to learn how to perform the job." *Id.* (quotation omitted).

thoracic and cervical spine in [February] 2012[8] showed degenerative change of the spine, but no instability or neural foraminal stenosis at any level," [*id.* at 354]; *see also* [#14-8 at 330], and concluded that the x-rays demonstrated "minimal findings." [#14-9 at 355].

Plaintiff requested that the Appeals Council review the ALJ's decision, which the Appeals Council denied, rendering the ALJ's decision the final decision of the Commissioner. *See* [#14-10 at 425]. Plaintiff then sought judicial review of the Commissioner's final decision in the United States District Court for the District of Colorado on July 9, 2020. [#1]. Because this matter is ripe for consideration, I consider the Parties' arguments below.

## LEGAL STANDARDS

An individual is eligible for DIB benefits under the Act if she is insured, has not attained retirement age, has filed an application for DIB, and is under a disability as defined in the Act. 42 U.S.C. § 423(a)(1). For purposes of DIB, the claimant must prove she was disabled prior to her date last insured. *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007). An individual is determined to be under a disability only if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. §§ 423(d)(2)(A), 13382c(a)(3)(B). The disabling impairment must last, or be expected to last, for at least 12 consecutive months. *See Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.905. When a claimant has one or more physical or

---

[8] The ALJ stated that this imaging was from July 2012. *See* [#14-9 at 354]. However, the court believes the ALJ is referring to imaging taken in February 2012, as she cites to a Consultation Report including this detail about February 2012 imaging but not discussing any July 2012 imaging. *See* [*id.*]; *see also* [#14-8 at 330].

mental impairments, the Commissioner must consider the combined effects in making a disability determination.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  These include:

1. Whether the claimant has engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment or combination of impairments;

3. Whether the claimant has an impairment that meets or medically equals any listing found at Title 20, Chapter III, Part 404, Subpart P, Appendix 1;

4. Whether the claimant has the Residual Functional Capacity ("RFC") to perform her past relevant work; and

5. Whether the claimant can perform work that exists in the national economy, considering the claimant's RFC, age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail).  "The claimant bears the burden of proof through step four of the analysis[,]" while the Commissioner bears the burden of proof at step five.  *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted).

In reviewing the Commissioner's final decision, the court limits its inquiry to whether substantial evidence supports the final decision and whether the Commissioner applied the correct legal standards.  *See Vallejo v. Berryhill*, 849 F.3d 951, 954 (10th Cir. 2017).  "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Flaherty*, 515 F.3d at 1070 (internal citation omitted);

*accord Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion.").  "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's."  *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

### ANALYSIS

On appeal, Ms. Lara challenges the ALJ's reasoning for rejecting Dr. Campbell's opinion concerning Ms. Lara's physical limitations.  [#16 at 11].  Specifically, Ms. Lara asserts that it was improper for the ALJ to reject Dr. Campbell's opinion on the following bases: (1) Dr. Campbell was not a treating physician; (2) Dr. Campbell's opinion was not consistent with Dr. Moser's opinion; (3) Dr. Campbell's opinion was not consistent with the record as a whole; and (4) Dr. Campbell's opinion was not supported by the imaging studies.  [*Id.* at 14-19].  In response, Defendant asserts that the ALJ's decision is supported by substantial evidence and argues that Plaintiff merely asks this court to re-weigh the evidence on appeal, which this court cannot do. *See, e.g.*, [#19 at 1, 10-12].  For the following reasons, I respectfully disagree with Plaintiff that further remand is warranted here.

## I.     The RFC Assessment – Weighing the Medical Opinions

In formulating a claimant's RFC, the ALJ must consider the combined effect of all the claimant's medically determinable impairments, including the severe and non-severe.  *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016).  A claimant's RFC is the most work the claimant can perform, not the least.  20 C.F.R. § 404.1545; SSR 83-10.  "'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"  *Hendron v. Colvin*, 767 F.3d 951,

954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 ("The RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence.")).  The ALJ need not identify "affirmative, medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category," and the court will uphold the RFC assessment if it is consistent with the record and supported by substantial evidence.  *See Howard v. Barnhart*, 379 F.3d 945, 947, 949 (10th Cir. 2004).

In assessing a claimant's RFC, the ALJ must also address medical source opinions.  *See Vigil v. Colvin*, 805 F.3d 1199, 1201-02 (10th Cir. 2015).  Generally, under the Social Security regulations, the opinion of an examining source is entitled to more weight than the opinion of a non-examining source.[9]  *See Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); 20 C.F.R. § 404.1527(c)(1).  Indeed, the opinion of an examining source is in no way "dismissable," *see Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012), and may be dismissed or discounted only upon an examination of the factors provided in the regulations and "specific, legitimate reasons for rejecting it."  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In assessing how much weight to give a medical source opinion, the ALJ must weigh that opinion using all the factors provided in 20 C.F.R. § 404.1527(c)(1)-(6).  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003); SSR 96-2p, 1996 WL 374188, at *4.  These factors include:

1.   the length of the treatment relationship and the frequency of examination;

---

[9] "In 2017, the [Social Security Regulations] were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'"  *Coyle v. Saul*, No. 18-cv-01110-PAB, 2020 WL 4529939, at *3 (D. Colo. Aug. 6, 2020) (quoting 20 C.F.R. § 404.1520c(a)).  However, because Ms. Lara's claim was filed prior to 2017, the previous Regulations apply.  *See* 20 C.F.R. § 404.1527 ("For claims filed . . . before March 27, 2017, the rules in this section apply.  For claims filed on or after March 27, 2017, the rules in § 404.1520c apply.").

2.   the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

3.   the degree to which the physician's opinion is supported by relevant evidence;

4.   consistency between the opinion and the record as a whole;

5.   whether or not the physician is a specialist in the area upon which an opinion is rendered; and

6.   other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004) (quotation marks omitted).  Ultimately, the ALJ's findings must be "sufficiently specific to make clear" the weight assigned to the source opinion and the reasons for that weight.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) (internal quotation marks omitted); *accord Golden-Schubert v. Comm'r, Soc. Sec. Admin.*, 773 F. App'x 1042, 1050 (10th Cir. 2019) (unpublished) ("An ALJ is not required to expressly discuss each factor in deciding what weight to give a medical opinion.").

## II.   Dr. Campbell's Opinion

At the request of Plaintiff's attorney, Dr. Campbell conducted a consultative examination of Plaintiff on May 29, 2015.  *See* [#14-8 at 329].  At this visit, Ms. Lara reported that she was experiencing neck pain almost all of the time, as well as pain in the left hip and sacroiliac joint area,[10] was experiencing dizziness, and that her fatigue required her to take daytime naps.  [*Id.*].  She also reported that she had depression and anxiety, could not tolerate crowds or groups, including family, and was experiencing forgetfulness.  [*Id.*].  Dr. Campbell reviewed Plaintiff's medical records, and as relevant here, noted that February 2012 x-rays of Plaintiff's thoracic and

---

[10] The sacroiliac joints are "situated where [the] lower spine and pelvis connect."  *See Sacroiliitis*, Mayo Clinic, available at: https://www.mayoclinic.org/diseases-conditions/sacroiliitis/symptoms-causes/syc-20350747 (last visited August 30, 2021).

cervical spine revealed "multilevel degenerative change," "[n]o fractures," and "[n]o instability on flexion/extension," and "[n]o significant bony neural foraminal stenosis." [*Id.* at 330]. Upon a physical examination of Plaintiff, Dr. Campbell found that her "[n]eck ha[d] kyphosis at C7-T1, with head forward posture." [*Id.*]. Dr. Campbell diagnosed Plaintiff with, among other things, "[c]hronic musculoskeletal pain at cervicothoracic spine with degenerative disc disease at C5-6, C6-7, but no radiculopathy" and "[c]hronic low back pain with mild degenerative joint disease, mild degenerative change left hip." [*Id.* at 332]. Finally, Dr. Campbell found that the February 2012 x-rays were "consistent with the complaints of pain in the cervicothoracic junction and across the trapezius and scapular areas." [*Id.*].

Based on her examination of Ms. Lara and a review of Ms. Lara's medical records, Dr. Campbell recommended the following limitations for Ms. Lara:

- Lifting and carrying up to 10 pounds for one-third of an eight-hour workday;

- Being on her feet for no more than 3 hours in an eight-hour workday;

- Standing for no longer than 30 minutes at a time;

- Stooping seldomly (up to one hour per day);

- Squatting, crawling, and kneeling rarely (fewer than 10 repetitions per day);

- Reaching rarely (fewer than 10 repetitions per day);

- Handling and fingering frequently (between one-third to two-thirds of a workday).

*See* [*id.* at 334-36]. Dr. Campbell stated that "[t]he limitations of musculoskeletal function are based as much as possible on the physical findings and conditions identified in the medical records, and are most significant in the cervicothoracic area and upper extremities." [*Id.* at 333].

In her second decision, the ALJ continued to give Dr. Campbell's opinion little weight. [#14-9 at 353]. First, the ALJ noted that Dr. Campbell was not a treating provider. [*Id.*]. Next,

the ALJ found that Dr. Campbell's opinion "[was] not consistent with the evidence viewed as a whole, including the longitudinal medical records and the opinion of the consultative evaluator, Timothy Moser, M.D., who examined the evidence in December 2013." [*Id.*]. The ALJ further found that Dr. Campbell's opinion was "not consistent with the longitudinal treatment notes from the treating provider, Southern Colorado Family Medicine," as "the treating provider notes paint a picture of someone who can perform work consistent with the adopted residual functional capacity." [*Id.* at 353-54]. Relevant here, the ALJ found that the "objective evidence does not support a finding of total disability," noting that imaging of the thoracic and cervical spine "showed degenerative change of the spine, but no instability or neural foraminal stenosis at any level," which amounted to "minimal findings." [*Id.* at 354-55].

## III.   Plaintiff's Arguments

Ms. Lara asserts that the ALJ failed to provide an adequate justification for giving Dr. Campbell's opinion very little weight. [#16 at 14]. Specifically, Ms. Lara asserts that (1) the fact that Dr. Campbell was not a treating physician "is insufficient to warrant rejection of her opinion," [*id.*]; (2) it was improper for the ALJ to reject Dr. Campbell's opinion on the basis that it was not consistent with the opinion of Dr. Moser, [*id.* at 15]; (3) it was error for the ALJ to reject Dr. Campbell's opinion on the basis that it was not consistent with the record as a whole, [*id.* at 17]; and (4) the ALJ erred in finding that the imaging studies do not support Dr. Campbell's opinion. [*Id.* at 19]. The court addresses these arguments in turn.

### A.   Examining Physician Status

First, Ms. Lara asserts that the ALJ provided inadequate justification for rejecting Dr. Campbell's restrictions because the fact that Dr. Campbell was an examining physician, rather than a treating physician, is an insufficient basis alone to reject her opinion. [*Id.* at 14]; *see also*

[#20 at 4 (Plaintiff arguing that, "[w]hile the doctor's role as a treating or examining physician is a proper factor to consider, there is no logic in the ALJ's suggestion that Dr. Campbell's opinion can be discounted *just because* she is an examining physician rather than a treating physician" (emphasis added))].  In support, Plaintiff quotes *Chapo*, 682 F.3d at 1291, for the proposition that the "fact that Dr. Campbell is only an examining physician 'is not by itself a basis for rejecting [her opinion]—otherwise the opinions of consultative examiners would essentially be worthless, when in fact they are often fully relied on as the dispositive basis for RFC findings.'"  [#16 at 14 (alteration marks in original)].

This court respectfully disagrees with Ms. Lara's characterization of the ALJ's reliance on Dr. Campbell's status as an examining physician in giving Dr. Campbell's opinion very little weight.  Ms. Lara has quoted no language from the ALJ's decision demonstrating that the nature of Dr. Campbell's treatment relationship with Plaintiff was the sole basis for the ALJ's rejection of Dr. Campbell's opinion.  *See generally* [#16; #20].  Upon review of the record, the court concludes that the ALJ did not rely solely on Dr. Campbell's status as an examining physician in affording her opinion very little weight.  *See* [#14-9 at 353-54].  Instead, it was one basis provided by the ALJ in her decision, alongside findings that Dr. Campbell's opinion were not consistent with the record or Dr. Moser's opinion.  *See* [*id.*].  Moreover, the ALJ was not only permitted to, but was *required* to, consider the nature of the treatment relationship between Dr. Campbell and Ms. Lara in evaluating the proper weight to assign to Dr. Campbell's opinion.  *See* 20 C.F.R. § 404.1527(c) (stating that the SSA generally gives controlling weight to the opinions of treating physicians and gives more weight to the opinions of examining physicians than non-examining physicians).  It was therefore proper for the ALJ to consider the fact that Dr. Campbell was not a treating physician in her assessment of the proper weight to be afforded to Dr. Campbell's

opinions, and because the nature of the treatment relationship was not the sole basis for the ALJ's rejection of Dr. Campbell's opinion, the court respectfully disagrees with Ms. Lara that reversal is warranted on this basis.

### B.    Consistency with Dr. Moser's Opinion

Next, Ms. Lara argues that it was improper for the ALJ to reject Dr. Campbell's opinion on the basis it was inconsistent with Dr. Moser's opinion. [#16 at 15]. This argument is two-fold: first, Ms. Lara asserts that Dr. Moser's opinion is not a proper comparison point to Dr. Campbell's opinion because "Dr. Moser did not believe [Ms. Lara] had any restrictions at all," and "the ALJ rejected Dr. Moser's opinion that plaintiff had no physical restrictions." [*Id.*]. Second, Plaintiff argues that Dr. Moser's opinion is not a proper comparator because the ALJ did not assess whether Dr. Moser considered the February 2012 x-rays in forming his physical-limitation opinion, and thus his opinion should not have been used against Dr. Campbell's "when it appears that [Dr. Moser] was not aware of the abnormal x-rays or the existence of degenerative disc disease." [*Id.* at 16-17].[11]   In response, the Commissioner argues that the ALJ "reasonably assessed two conflicting medical opinions" and resolved a conflict in the evidence by finding a middle ground. [#19 at 10, 13].

*The ALJ's Rejection of Dr. Moser's Restriction Opinion*. First, Plaintiff argues that the ALJ erred in using Dr. Moser's opinion as a comparator to Dr. Campbell's opinion because "Dr. Moser did not believe plaintiff had any restrictions at all" and "the ALJ rejected Dr. Moser's opinion that plaintiff had no physical restrictions." [#16 at 15]. Plaintiff cites *Garcia v. Barnhart*

---

[11]  Specifically, Plaintiff notes that Dr. Moser's report stated that he reviewed "[t]he provided medical records," but does not expressly state which medical records were reviewed, and that Dr. Moser did not diagnose Plaintiff with or mention her degenerative disc disease. *See* [#16 at 16]; *see also* [#14-7 at 300-03].

for the proposition that "[t]he ALJ here could not reject Dr. Campbell's opinion simply based on its contradiction by a consulting opinion that the ALJ also did not accept." [*Id.* at 15 (alteration marks revised) (quoting *Garcia v. Barnhart*, 188 F. App'x 760, 766 (10th Cir. 2006 (unpublished)].

The court finds that *Garcia* is distinguishable from the facts of this case. In *Garcia*, the ALJ discredited a treating physician's opinion "because a consulting physician simply disagreed with him over the interpretation and assessment of the symptoms of Mr. Garcia's impairment." 188 F. App'x at 765. More specifically, the ALJ "never specifically held, much less explained why, [the treating physician's] opinions were outweighed by those of the consultant." *Id.* at 766. Noting that "the ALJ did not adopt [the consultant's] findings either," the Tenth Circuit concluded that, "[i]f an ALJ cannot summarily accept and elevate a consulting opinion over a treating opinion . . . the ALJ here could not reject [the treating physician's] opinion simply based on its contradiction by a consulting opinion the ALJ also did not accept." *Id.*

Here, the ALJ did not summarily reject Dr. Campbell's opinion based on Dr. Moser's contradictory opinion. Instead, the ALJ rejected Dr. Campbell's opinion because, *inter alia*, it was not consistent with the record as a whole. *See* [#14-9 at 354-55 ("[T]he limitations Dr. Campbell assessed are not in line with the evidence of record since 2011, showing minimal findings as discussed above, including relatively benign physical examinations and minimal findings upon imaging."). And the ALJ supported this determination by providing specific citations to the medical record, explaining how she relied on such evidence in reaching her conclusion. *See, e.g.*, [*id.* at 355]; *see also* [#17-4 at 256 (plaintiff reporting in October 2011 that she could complete daily activities without difficulty)]; [*id.* at 254 (examination in November 2011 revealed normal gait and station, range of motion in upper extremities, stability of upper extremities, and

examination of lower extremities)]; [#14-8 at 329 (February 2012 spinal imaging showed degenerative changes, but no instability or neural foraminal stenosis)]; [#14-7 at 14 (noting in July 2013 that x-rays showed normal imaging)]. Thus, the court finds that *Garcia* is inapplicable to the matter presently before the court.

Indeed, the ALJ is often tasked with weighing the inconsistencies between conflicting medical opinions, and it is permissible for the ALJ to "adopt[] a middle ground that [does] not fully embrace either one." *Guillar v. Comm'r, SSA*, 845 F. App'x 715, 719 (10th Cir. 2021) (unpublished). The Tenth Circuit has "affirmed such an approach as consistent with the ALJ's prerogative to weigh the medical evidence before her." *Id.* And although the ALJ found Ms. Lara to be more restricted than Dr. Moser had opined, it does not follow that the ALJ was required to adopt Dr. Campbell's physical limitation opinion. *Cf. Medina v. Berryhill*, No. 16-cv-01339-NYW, 2017 WL 1862279, at *7 (D. Colo. May 8, 2017) ("[A]lthough the ALJ discredited Dr. Osborne's opinion, this fact alone does not support Mr. Medina's argument that the ALJ was required to accept Dr. Connolly's severe restrictions, and the court concludes that the ALJ did not err by picking a middle ground without adopting either opinion."). Thus, the court finds no error in the ALJ's decision to use Dr. Moser's contradictory opinion as *one* of several bases for rejecting Dr. Campbell's opinion. *See Golden-Schubert*, 773 F. App'x at 1050 (explaining that citation to inconsistent evidence is one way an ALJ can support her decision for affording little weight to a medical source opinion); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

**The ALJ's Assessment as to Whether Dr. Moser Considered the 2012 X-Rays**. Next, Plaintiff asserts that the ALJ failed to assess whether Dr. Moser considered the x-rays

demonstrating degenerative disc disease in rendering his opinion that Plaintiff had no physical limitations, and thus it was improper for the ALJ to discount Dr. Campbell's opinion based on its inconsistency with Dr. Moser's opinion.  [#16 at 16].  In response, the Commissioner asserts that Plaintiff's argument is "nothing more than an argument that the ALJ weighed the evidence 'wrong'" and is a "request that this Court reweigh the evidence differently."  [#19 at 13].  The court respectfully disagrees with Defendant's assertion; Plaintiff does not, as Defendant suggests, argue that, because there is no evidence that Dr. Moser reviewed the x-rays, his opinion should automatically be given less weight than Dr. Campbell's.  *See* [*id.* ("Plaintiff's primary argument is that Dr. Campbell reviewed x-rays showing degenerative changes and there is no evidence that Dr. Moser reviewed the x-rays.  Thus, as Plaintiff argues, Dr. Campbell's opinion should have been given more weight than Dr. Moser's.")].  Instead, Plaintiff asserts that "[t]he error [in the ALJ's decision] is that the ALJ did not assess the question of whether Dr. Moser considered the abnormal x-rays," as directed by Judge Babcock.  [#16 at 16-17].

In his order, Judge Babcock agreed "in part" with Plaintiff's argument that the ALJ had failed to adequately explain her rejection of Dr. Campbell's opinion.  [#14-10 at 443].  First, Judge Babcock determined that the ALJ's statement that the x-rays in the medical record constituted "normal imaging" was "in contradiction of x-rays taken of Plaintiff's thoracic and cervical spine on February 1, 2012. " [*Id.* at 444].  Finding that the x-rays were "unquestionably relevant" to the ALJ's conclusion that Dr. Campbell's opinion was not consistent with the record, Judge Babcock ordered that "Plaintiff's spine x-rays must therefore be considered on remand in conjunction with Dr. Campbell's opinion."  [*Id.* at 445].  Then, Judge Babcock stated as follows:

> Further consideration of Plaintiff's abnormal spine x-rays is particularly warranted since the opinion of Dr. Moser, the final basis cited by the ALJ for giving 'very little weight' to Dr. Campbell's opinion, suffers from several weaknesses.  First, like Dr. Campbell, Dr. Moser was not a treating physician whose opinion was

presumptively entitled to greater weight.  Second, Dr. Moser assessed Plaintiff with no physical limitations, an opinion that was outright rejected by the ALJ.  AR 20 & 303.  Third, the ALJ gave some weight to Dr. Moser's opinion, in part, because it was consistent with Plaintiff's longitudinal records.  Again though, it is unclear if the ALJ, or Dr. Moser, considered Plaintiff's abnormal spine x-rays.  Along with Plaintif[f]'s spine x-rays then, Dr. Moser's opinion and its impact on the weight given Dr. Campbell's opinion should therefore also be given further consideration on remand.

[*Id.* at 445].  As Judge Babcock indicated, it is unclear from Dr. Moser's examination record whether Dr. Moser considered the spinal x-rays from February 2012 or Plaintiff's degenerative disc disease in finding that Plaintiff had zero physical limitations in the workplace.  *See* [#14-7 at 300-03].  Plaintiff argues that the ALJ's failure to address this uncertainty renders Dr. Moser's opinion an improper comparison point for Dr. Campbell's.  [#16 at 5].

> *The Mandate Rule*.  Although Ms. Lara does not expressly use the term "mandate rule" in her briefing, *see* [#16], the court finds that her argument that the ALJ failed to comply with the district court's order on remand is essentially an argument that the ALJ failed to follow the mandate rule.  "The mandate rule is a corollary of the law-of-the-case doctrine and requires a court to 'comply strictly with the mandate rendered by the reviewing court.'"  *Parraz v. Saul*, No. 2:19-cv-00904-LF, 2021 WL 1177106, at *4 (D.N.M. Mar. 29, 2021) (quoting *Huffman v. Saul Holdings Ltd. P'ship*, 262 F.3d 1128, 1132 (10th Cir. 2001)).  "Although primarily applicable between courts of different levels, . . . the mandate rule appl[ies] to judicial review of administrative decisions, and require[s] the administrative agency, on remand from a court, to conform its further proceedings in the case to the principles set forth in the judicial decision, unless there is a compelling reason to depart."  *Grigsby v. Barnhart*, 294 F.3d 1215, 1218 (10th Cir. 2002) (quotation omitted).  "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review."  *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989).  "To decide whether the [ALJ] violated the mandate, it is necessary to

examine the mandate and then look at what the [ALJ] did." *Hicks v. Gates Rubber Co.*, 928 F.2d 966, 969 (10th Cir. 1991).

  ***Judge Babcock's Order***.  In addressing Ms. Lara's argument that the ALJ failed to follow the mandate rule, the court finds that a detailed review of Judge Babcock's order is helpful.  In his order, Judge Babcock agreed "in part" with Plaintiff's argument that the ALJ had failed to adequately explain her rejection of Dr. Campbell's opinion.  [#14-10 at 443].  First, Judge Babcock determined that the ALJ's statement that the x-rays in the medical record constituted "normal imaging" was "in contradiction of x-rays taken of Plaintiff's thoracic and cervical spine on February 1, 2012.  [*Id.* at 444].   Finding that the x-rays were "unquestionably relevant" to the ALJ's conclusion that Dr. Campbell's opinion was not consistent with the record, Judge Babcock ordered that "Plaintiff's spine x-rays must therefore be considered on remand in conjunction with Dr. Campbell's opinion."  [*Id.* at 445].  Then, Judge Babcock stated as follows:

> Further consideration of Plaintiff's abnormal spine x-rays is particularly warranted since the opinion of Dr. Moser, the final basis cited by the ALJ for giving 'very little weight' to Dr. Campbell's opinion, suffers from several weaknesses.  First, like Dr. Campbell, Dr. Moser was not a treating physician whose opinion was presumptively entitled to greater weight.  Second, Dr. Moser assessed Plaintiff with no physical limitations, an opinion that was outright rejected by the ALJ.  AR 20 & 303.  Third, the ALJ gave some weight to Dr. Moser's opinion, in part, because it was consistent with Plaintiff's longitudinal records.  Again though, it is unclear if the ALJ, or Dr. Moser, considered Plaintiff's abnormal spine x-rays.  Along with Plaintif[f]'s spine x-rays then, Dr. Moser's opinion and its impact on the weight given Dr. Campbell's opinion should therefore also be given further consideration on remand.

[*Id*. at 445].

  The court certainly agrees that the ALJ's review of Dr. Moser's opinion upon remand is cursory and lacks an express discussion as to whether Dr. Moser considered the x-rays in forming his limitation opinion.  *See* [#14-9 at 354-55].  Indeed, in her second decision, the ALJ made only minor changes to her original assessment of  Dr. Moser's opinion.  *Compare* [#14-2 at 20-21 (the

original decision)] *with* [#14-9 at 354-55 (the second decision)].  With that said, the court cannot conclude that the ALJ committed reversible error here.  As an initial matter, Judge Babcock did not expressly direct the ALJ to address in her decision whether Dr. Moser considered the x-rays; instead, he noted several deficiencies in Dr. Moser's opinion—including that it was unclear whether Dr. Moser considered the x-rays—and directed that "Dr. Moser's opinion and its impact on the weight given Dr. Campbell's opinion should therefore also be given further consideration on remand."  [#14-10 at 445].  Thus, Judge Babcock's specific mandate was to reconsider Dr. Moser's opinion in light of the x-rays, which it appears that the ALJ did.

Indeed, following remand, the ALJ continued to give Dr. Moser's opinion "some weight," finding that it was "generally consistent with the longitudinal record, showing *minimal findings*, and is supported by his examination of the claimant which likewise showed *minimal findings*." *See* [#14-9 at 355 (emphasis added)]; *see also* [*id.* (concluding that the 2012 x-rays, which the ALJ was required to review on remand, showed "minimal findings")]; [*id.* at 354 (discussing the contents of the February 2012 x-rays)].  Although the ALJ did not expressly discuss whether Dr. Moser considered the x-rays in forming his opinion, she continued to cite specific record evidence supporting her conclusion that Dr. Moser's opinion was generally consistent with the longitudinal record, *see* [*id.* at 354-55], and throughout her decision, she also cited other evidence supporting her conclusion that Dr. Moser's opinion was consistent with the longitudinal record.  *See, e.g.*, [*id.* at 354-55]; *see also* [#14-7 (exam findings showing normal gait and station, range of motion in upper and lower extremities); [#14-8 at 220 (February 2012 spinal x-rays showing degenerative changes but no fractures, instability, or significant bony neural foraminal stenosis)]; [*id.* at 242 (Southern Colorado Family Medicine notes noting "normal" x-rays of arm and neck)]; [*id.* at 301-02 (Dr. Moser noting during examination that Plaintiff could get on and off examination table

without difficulty, that she had normal gait and heel walk, toe walk, and tandem walk)]; *see also Kies v. Saul*, No. 19-cv-00848-REB, 2019 WL 6609473, at *3 (D. Colo. Dec. 5, 2019) ("Prior to assessing the medical opinions, the ALJ set forth a detailed recitation of the medical evidence relevant to plaintiff's alleged impairments.  Having once discussed this evidence, the ALJ was not required to do so again.").

The ALJ certainly could have provided, and this court would have welcomed, a more detailed assessment of Dr. Moser's opinion, and an express discussion as to whether Dr. Moser considered all of the relevant evidence would have provided more robust support to the ALJ's final decision.  But although an ALJ must *consider* the degree to which a medical source's opinion is consistent with the record and to the extent it is supported by relevant evidence—which implies a need to consider whether the medical source considered all of the relevant evidence—an ALJ is not required to expressly *discuss* each of these things.   *See Medina v. Berryhill*, 362 F. Supp. 3d 989, 998 (D. Colo. 2019).  Instead, the ALJ must "give good reasons in the notice of determination or decision for the weight [s]he ultimately assigns the opinion."  *Id.* (quotation omitted).  Here, the court finds that the ALJ gave a sufficient explanation for the weight assigned to Dr. Moser's opinion, and does not find that it was error to use Dr. Moser's opinion as a comparator for Dr. Campbell's.[12]

---

[12] Moreover, the court finds that, even if it were error for the ALJ to not expressly address whether Dr. Moser considered the x-rays, such error would be harmless, because as set forth throughout this order, *see infra* Sections III.B-D, the ALJ's decision was supported by substantial evidence. *See Saltsgaver v. Colvin*, No. 12-cv-03039-RM, 2015 WL 5031969, at *6 (D. Colo. Aug. 26, 2015) (in response to claimant's argument that the ALJ erred in failing to evaluate a prescription form, finding that "[e]ven if the ALJ's choice not to specifically address this document could be considered error, any such error would be harmless," because it would not have altered the conclusion of a reasonable ALJ); *Bernal v. Bowen*, 851 F.2d 297, 302-03 (10th Cir. 1988) ("Since the ALJ's decision is amply supported by the medical reports and the record, Mr. Bernal was not prejudiced by the ALJ's actions.  For these reasons, we find no error in the fact that the case review and RFC were completed by the ALJ without the assistance of a mental health professional.").

### C.      Consistency With the Evidence as a Whole

Next, Plaintiff argues that it was error for the ALJ to reject Dr. Campbell's opinion on the basis that it was inconsistent with the medical record as a whole, and specifically, Plaintiff's treatment notes from Southern Colorado Family Medicine.  [#16 at 17].  According to Plaintiff, because the treatment notes do not contain any opinions as to Plaintiff's functional capacity or physical limitations, the ALJ's finding of inconsistency between Dr. Campbell's opinion and the treatment notes amounts to improper speculation and substitution of the ALJ's opinion for that of a medical professional.  [*Id.* at 17-18].  In addition, Ms. Lara argues that the noted from Southern Colorado Family Medicine do not contradict Dr. Campbell's opinion, and thus it was improper for the ALJ to use the notes as a basis for discrediting Dr. Campbell's opinion.  [*Id.* at 18].

The court cannot conclude that the ALJ improperly substituted her medical judgment for that of a professional when she found that the treatment notes were not consistent with Dr. Campbell's opinion.  Although the treatment notes "do not contain an opinion about [P]laintiff's functional capacity or restrictions," [#16 at 17], Plaintiff cites to no legal authority demonstrating that an ALJ may only use the record evidence that sets out physical-limitation opinions in assessing the supportability or consistency of a physician's physical-limitation opinion.  Indeed, "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."  *Chapo*, 682 F.3d at 1288.  ALJs routinely consider the entire record of medical evidence, including treatment notes, exam findings, subjective reports of pain and mobility, medication history, and the like, in reaching a decision as to a claimant's RFC.  *See Romero v. Colvin*, 174 F. Supp. 3d 1283, 1288 (D. Colo. 2016) ("An ALJ must consider *all evidence* and explain why he or she finds a claimant not disabled.") (emphasis added); *see also Perone v. Astrue*, No. 11-cv-01568-LTB, 2012 WL 5240264, at *10

(D. Colo. Oct. 23, 2012) (finding no error where the ALJ found that a physician's opinions as to the claimant's RFC and capacity to work "were not consistent with the treatment records, exam findings, and other objective evidence of record, including [the physician's] own treatment records").

"Although an ALJ is not an acceptable medical source qualified to render a medical opinion, 'the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record.'" *Cindy S. C. v. Saul*, No. CV 18-1307-JWL, 2019 WL 3943065, at *6 (D. Kan. Aug. 21, 2019) (quoting *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)). "[T]he ALJ's RFC assessment is an administrative, rather than a medical determination." *McDonald v. Astrue*, 492 F. App'x 875, 885 (10th Cir. 2012) (unpublished); *see also Cindy S.*, 2019 WL 3943065, at *6 (explaining that Congress intended the Commissioner, not a healthcare professional, to make the RFC assessment). Here, the ALJ cited to record evidence and explained why she believed that that record evidence contradicted Dr. Campbell's opinion. *See* [#14-10 at 353-55]. So long as substantial evidence supports the ALJ's decision—which the court finds that it does—the court cannot second guess the Commissioner's decision. Accordingly, the court finds no error in the ALJ's reliance on the Southern Colorado Family Medicine treatment notes in discrediting Dr. Campbell's opinion. *See Cindy S. C.*, 2019 WL 3943065, at *6.

Insofar as Plaintiff challenges the ALJ's finding that Dr. Campbell's opinion is contradicted by the notes from Southern Colorado Family Medicine on the basis that the treatment notes *actually support* Dr. Campbell's opinion, *see* [#15 at 18-19], such an argument is not appropriate for this court's review. While there may be materials in the treatment notes that support Dr. Campbell's opinion, "it is the ALJ's (not the court's) responsibility to resolve evidentiary inconsistencies." *Ojeda Perez v. Comm'r, Soc. Sec. Admin.*, No. 18-cv-01464-NYW,

2019 WL 6769859, at *7 (D. Colo. Dec. 12, 2019), and the court cannot reweigh the evidence before the ALJ.  *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see also Flaherty*, 515 F.3d at 1070 (stating that the court cannot "retry the case" on review).  As set forth above, the court finds that the ALJ adequately supported her finding that Dr. Campbell's opinion was not consistent with the medical record.  For that reason, the court does not find reversible error here.

### D.    Consistency With the Imaging Studies

Finally, Ms. Lara contends that it was error for the ALJ to conclude that the imaging contained in the record did not support Dr. Campbell's opinions.  [#16 at 19].  Similar to her argument above, Ms. Lara asserts that the x-rays actually support, and do not contradict, Dr. Campbell's opinion, and that the ALJ impermissibly substituted her judgment for that of Dr. Campbell.  [*Id.* at 20-21].

The court respectfully disagrees with Plaintiff.  As an initial matter, the court finds that the ALJ did not, as Plaintiff suggests, "us[e] the x-rays against Dr. Campbell's opinion" or find that the x-rays "contradict[ed] Dr. Campbell's restrictions."  *See* [*id.*].  Instead, the court interprets the ALJ's decision as a determination that the x-rays provided *insufficient support* to Dr. Campbell's opinion to overcome what the ALJ believed to be a substantial amount of contradictory evidence in the record.  *See, e.g.*, [#14-9 at 355 ("[T]he limitations Dr. Campbell assessed are not in line with the evidence of record since 2011, . . . including relatively benign physical examinations and minimal findings upon imaging. . . . Thus, even imaging studies showed few findings to justify the extent of the limitations described by Dr. Campbell.")].  Accordingly, the court is respectfully not persuaded by Plaintiff's argument that reversal is warranted because "[t]here is no evidence that the degeneration shown on the x-rays contradicts Dr. Campbell's restrictions."  *See* [#16 at 20].

Moreover, even if the ALJ had concluded that the x-rays contradicted Dr. Campbell's opinion, a challenge to the fact of such finding would be an improper basis for appeal before this court.  As set forth above, the court is not permitted to reweigh evidence on review, i.e., the court cannot elect to itself analyze whether the x-rays tended to support or contradict Dr. Campbell's opinion.  *Qualls*, 206 F.3d at 1371; *Ojeda Perez*, 2019 WL 6769859, at *7.  The ALJ found that, because the x-rays showed no instability or neural foraminal stenosis at any level, the x-rays revealed "minimal findings" despite the fact that the x-rays also showed degenerative changes. *See* [#14-9 at 355].  It was within the province of the ALJ to reach such a conclusion, so long as her decision was supported by substantial evidence, *Cindy S. C.*, 2019 WL 3943065, at *6; the court concludes that it was.  Moreover, the court does not find that the ALJ impermissibly substituted her judgment for that of Dr. Campbell.  *See* [#16 at 21].  Instead, the ALJ weighed the conflicting findings in the x-rays—both the evidence of degenerative changes and the evidence of no instability, fractures, or stenosis—and determined that, on balance, the x-rays showed "minimal findings."  In so doing, the ALJ acted within her administrative authority, *see Eggleston v. Bowen*, 851 F.2d 1244, 1247 (10th Cir. 1988) (ALJ may resolve conflicting medical evidence), and cited record evidence to support her conclusion.  [#14-9 at 354-55].  The court does not find error in the ALJ's finding that the x-rays were insufficient to overcome other record evidence supporting a finding of non-disability.

In sum, the court cannot conclude that the ALJ committed reversible error in discrediting Dr. Campbell's opinion on the bases that Dr. Campbell was not a treating physician, that her opinion was inconsistent with Dr. Moser's opinion, that her opinion was inconsistent with the

medical record as a whole, or her finding that the x-rays did not sufficiently support Dr. Campbell's opinion.  Accordingly, the court **AFFIRMS** the Commissioner's decision.[13]

## CONCLUSION

For the reasons stated herein, the court hereby **AFFIRMS** the final decision of the Commissioner of Social Security.

DATED:  August 31, 2021                    BY THE COURT:

                                           _____
                                           Nina Y. Wang
                                           United States Magistrate Judge

---

[13] Although not raised by Plaintiff in her briefing, *see* [#16], the court briefly discusses certain concerning comments made by the ALJ at the second hearing.  At the hearing, Plaintiff's counsel mentioned to the ALJ that Dr. Campbell had limited Plaintiff to sedentary work.  [#14-9 at 385]. In response, the ALJ stated that, "I mean, I'm just telling you, right now, I didn't think a lot about Dr. Campbell's report.  For one thing, we know *she's extremely generous to everyone*. . . . Usually, in a file, her report is an outlier report, and everybody else is in a bunch somewhere else."  [*Id.* at 385-86 (emphasis added)].  The court does not address these  comments in this Order because: (1) Ms. Lara did not raise this issue in her own briefing, *see United States v. Davis*, 622 F. App'x 758, 759 (10th Cir. 2015) ("[I]t is not this court's duty, after all, to make arguments for a litigant that he has not made for himself"); (2) the court finds that the ALJ's decision was supported by substantial evidence, and (3) an ALJ "enjoys a presumption of honesty and integrity," *Harline v. Drug Enf't Admin.*, 148 F.3d 1199, 1204 (10th Cir. 1998).  However, the court notes that the Tenth Circuit has advised that "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion*."  *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted; emphasis in original); *see also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was . . . 'an act of courtesy to a patient.'"); *Wentworth v. Barnhart*, 71 F. App'x 727, 728-29 (9th Cir. 2003) (unpublished) ("The ALJ's conclusions that Dr. Brown, '[a]s usual,' neglected to cite two particular studies and that he is 'a plaintiff's doctor who reports what he is paid to say, i.e., disability,' are both unsupported by the record and indicative of a bias against Dr. Brown, presumably based on past experience with the doctor.  The ALJ should not have based his opinion on past activity by Dr. Brown that was not in the record.").